IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-0805-WJM-KMT

CYNTHIA CAROSELLA,

    Plaintiff,

v.

ONE WORLD TRANSLATION & ASSOCIATES, INC.,

    Defendant.

## ORDER ON MOTIONS *IN LIMINE*

Plaintiff Cynthia Carosella ("Carosella") was a human resources director at Defendant One World Translation & Associates, Inc. ("One World") for approximately six months in 2013. She claims that, during her tenure, she discovered and also personally experienced sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); and also pay discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d). She further alleges that she reported at least the discrimination others experienced to her superiors and suffered retaliation as a consequence. She now brings claims against One World for sex discrimination in violation of Title VII, retaliation in violation of Title VII, sex discrimination in violation of the Equal Pay Act, retaliation in violation of the Equal Pay Act, libel, and intentional infliction of emotional distress. The matter is set for trial beginning October 9, 2018.

Currently before the Court is Carosella's Motion *in Limine* on Various Issues (ECF No. 107) and One World's Motion *in Limine* (ECF No. 108). As to each of these

motions, the Court grants in part, denies in part, and denies in part without prejudice to re-raising the matter at trial.

### I.  PLAINTIFF'S MOTION (ECF No. 107)

**A.     Item 1: "Certain Emails."**

Before her alleged constructive discharge, Carosella forwarded e-mails from her One World e-mail box to her personal e-mail address.  She marked up some of these forwarded e-mails.  After her discharge, she returned all of these forwarded e-mails, with markups (if any), to One World via a thumb drive.  She now wishes to use these e-mails at trial as evidence of the content of the original e-mails (*i.e.*, the e-mails as they existed in her One World inbox) because One World can no longer locate the originals. (ECF No. 107 at 2–3.)

One World agrees not to challenge the authenticity of the thumb drive e-mails but "reserves the right to ask limited questions about the underlying [originals] for the purpose of informing the jury regarding the unique formatting and content of [the thumb drive versions]."  (ECF No. 116 at 2.)  One World also reserves "all other objections . . . including but not limited to relevance, hearsay, and unfair prejudice."  (*Id.*)

The Court grants Carosella's motion to the extent of One World's authenticity concession.  The motion is denied without prejudice to the extent Carosella argues that the e-mails, or any one of them, are fully admissible.  Such a ruling must await trial and will turn on their content and the context in which they are presented.

**B.     Item 2: After-Acquired Evidence**

The thumb drive e-mails are part of a larger collection of One World documents that Carosella collected before her alleged constructive discharge and then kept for herself after that event.  She argues that these documents' only possible relevance is to

One World's after-acquired evidence defense, *i.e.*, that it would have terminated Carosella for collecting One World documents on her personal computer.  She further argues that the after-acquired evidence defense is only relevant to her damages, if any.  Before that, she says, the evidence would not only be irrelevant but also excludable as unduly prejudicial and as impermissible character evidence.  She therefore requests "separate hearings to bifurcate the issues of liability and damages to avoid potential prejudice."  (ECF No. 107 at 5–6.)

One World responds that this evidence is relevant to rebut Carosella's claim of constructive discharge and it "substantiates the truth of certain allegedly defamatory statements."  (ECF No. 116 at 2.)  In other words, it is not relevant solely to the after-acquired evidence defense.

The Court does not have enough context to make a blanket ruling about the alleged after-acquired evidence.  Moreover, it is far too late to suggest a bifurcated trial.  Accordingly, the request for bifurcation is denied and the request to exclude the after-acquired evidence is denied without prejudice to renewal at trial in the context of a specific exhibit or line of questioning.

C.  **Item 3(a): Child Support Payments & Unemployment Benefits**

Carosella receives monthly child support payments.  In 2013 (the year of her alleged constructive discharge) and 2014, she received unemployment benefits.  She requests that all of these amounts be excluded from evidence so that One World cannot use them to argue for an offset against any back pay award.  (ECF No. 107 at 6–7.)

Defendant agrees not to introduce evidence of child support payments.  As to unemployment benefits, however, One World points to *EEOC v. Sandia Corp.*, 639 F.2d 600, 624–26 (10th Cir. 1980), and *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544,

3

1555 (10th Cir. 1988), both of which arguably stand for the proposition that a district court has discretion whether to deduct unemployment benefits from a back pay award, although seemingly with a preference for not deducting such benefits. (*See* ECF No. 116 at 3.)

The Court need not resolve this question in this posture. If unemployment benefits are deductible from a back pay award, that is a question the Court should address through a postjudgment motion. It is not something for the jury to decide. Carosella's request is therefore granted—One World may not introduce evidence at trial of either child support benefits or unemployment benefits.

**D.  Item 3(b): Loans from Friends**

Carosella has also relied on loans from friends since her alleged constructive discharge. She argues that evidence of these loans is irrelevant and that "any reference to those monies should be redacted from [her] 2015 tax return, if such exhibit is submitted into evidence." (ECF No. 107 at 7.)

One World responds that "[t]hese loans—and the reasons for obtaining [them]—are unquestionably relevant to [Carosella's] motivation in filing suit; and [Carosella] put these facts at issue when she listed attempted foreclosures on her home and the personal loans she took to keep her home as damages allegedly suffered in this matter." (ECF No. 116 at 4.)

The Court generally agrees with Carosella that her personal loans are not relevant to the question of a potential damages *offset*. Perhaps her creditors have a claim on any recovery Carosella might win in this lawsuit, but that is a matter between Carosella and her creditors, not a basis for One World to argue for a damages offset.

That said, if Carosella seeks the principal and/or interest from these loans as

4

damages, she must introduce evidence of the loans. So the admissibility of this evidence is entirely in her control. If she chooses not to introduce evidence of her loans, then the Court agrees that One World may not introduce evidence of those loans for purposes of seeking an offset to damages. As for One World's argument that the loans are relevant to Carosella's motivation in filing suit, the Court does not have enough context to make a ruling. One World must therefore request a sidebar before it seeks to introduce any such evidence. The Court cannot provide a more definitive ruling at this time.

**E.     Item 4: One World's Failure-to-Mitigate Defense**

One World intends to argue that Carosella did not adequately search for other job opportunities after her alleged constructive discharge. Carosella argues that her "efforts to mitigate her damages were reasonably diligent" and One World has "offered no evidence to support the defense of failure to mitigate." (ECF No. 107 at 7.) She therefore requests an order excluding all evidence or argument addressing One World's failure-to-mitigate defense. (*Id.* at 8.)

"A motion *in limine* that is a veiled motion for summary judgment may . . . be denied out of hand." WJM Revised Practice Standard III.F.1. This request is a veiled motion for summary judgment on Defendant's affirmative defense of failure to mitigate. It is, accordingly, denied. This denial is without prejudice to renewal of the argument, should it be appropriate given the evidence at trial, in the context of a Rule 50 motion at the close of One World's case.

**F.     Item 5: Voluminous Exhibits**

One World's Exhibit Y comprises 359 pages and its Exhibit A37 comprises 836 pages. Carosella argues that these exhibits are unnecessarily voluminous, potentially

5

misleading or needlessly cumulative under Rule 403, and that portions are hearsay. (ECF No. 107 at 8–9.)

One World responds that it has agreed to withdraw Exhibit Y and that it continues to negotiate with Carosella regarding Exhibit A37, including redacting portions. (ECF No. 116 at 5.) One World adds that Exhibit A37 "will be used primarily for the fact of its existence and volume, rather than the content of each individual page within the document." (*Id.*)

Although the matter is in flux, the Court is not persuaded by One World that it may introduce this exhibit for purposes of demonstrating its size to the jury. If Carosella will stipulate that the documents she collected from One World comprised 836 pages, the Court will grant Carosella's request to exclude Exhibit A37. Otherwise, this request is denied without prejudice to renewal at trial when One World seeks to admit the exhibit.

**G.     Item 6(a): Plaintiff's Motive**

Carosella argues that One World should not be permitted to use "improper and inflammatory opening[] or closing statements or arguments referencing [her] motive, [her] alleged greed, or [her] attempt to obtain an undue financial benefit." (ECF No. 107 at 9–10.)

One World responds that it "does not oppose a restriction on unduly inflammatory language regarding [Carosella's] motive in filing suit," but her motive "is plainly relevant" because it "goes to the truth of various allegedly defamatory statements." (ECF No. 116 at 5.)

A plaintiff's motive for filing suit may be relevant to credibility. The Court cannot say on this record that Carosella's motive will be irrelevant in this particular case.

6

Moreover, an order excluding "improper and inflammatory" statements or arguments (to use Carosella's words) provides the parties no guidance. The Court must therefore deny this request without prejudice to any particular objection a party may make at trial. To be clear, however, the Court does not accept Carosella's apparent premise that references to her motive, including references to potential greed, are *per se* "improper and inflammatory." But the Court nonetheless expects that One World's counsel will not employ unduly inflammatory rhetoric.

**H.    Item 6(b): Requests for Stipulations in the Jury's Presence**

Argues Carosella, "Counsel, whether for [Carosella] or [One World], should not request that opposing counsel stipulate to the admissibility of evidence or facts in front of the jury." (ECF No. 107 at 10.)

One World agrees "that stipulations regarding evidence or facts [must] be made outside the jury's presence." (ECF No. 116 at 5.)

This is not the proper subject of a motion *in limine*. And, given One World's agreement, the matter is moot.

**I.    Item 6(c): Failure to Call Witnesses**

Carosella asks the Court to prohibit "reference[s] to the failure of either party to call any employee for One World or any other witness, especially where such testimony would be cumulative." (ECF No. 107 at 10.)

One World responds that it "agrees to not make unduly prejudicial comments about potentially cumulative testimony," but "it is undisputed that the burden of proof at trial belongs to [Carosella]; and to the extent [Carosella] fails to produce testimony in support of her claims, [One World] should be able to reference this fact to the jury." (ECF No. 116 at 5.)

7

In civil trials, a party's failure to call a witness is usually fair game for the opposing party. Carosella offers no circumstance unique to this case that might dictate a different rule. To the extent One World makes a failure-to-call argument, Carosella is free to counter that argument in any admissible way she feels appropriate. But the Court will not exclude the argument, and therefore denies this request.

## II. ONE WORLD'S MOTION (ECF No. 108)

### A. Item 1: The Spreadsheet

"Near the end of her employment with [One World], [Carosella] created two spreadsheets purporting to represent an analysis of pay rates among certain Spanish interpreters [employed by One World]." (ECF No. 108 at 2.) She prepared these spreadsheets for her own purposes, not One World business purposes, and she assembled the data "by hand" from a group of 101 employee files she selected other than at random. (*Id.*) The spreadsheet purports to show a disparity in pay rates. (*Id.* at 3.) One World argues that the spreadsheets are inadmissible hearsay, irrelevant, improper lay opinion, and are inadmissible under Rule 1006. (*Id.* at 2–6.)

As to hearsay, Carosella responds that she offers the spreadsheets not as proof of the data presented there, but for "the effect on the listener, Ms. Carosella, and her knowledge of the pay disparities between male and female interpreters." (ECF No. 115 at 2.) At first blush, it seems patently absurd that a witness may create a document and then introduce that document for the effect it had on the witness. Such a rule seems endlessly manipulable. However, in this specific context, Carosella's argument has some merit (although, as will become clear below, it leads to other problems).

Carosella could, in theory, introduce all 101 employee files for the effect they had on her when looked at comparatively—or in other words, to show why she came to

8

suspect systemic pay disparities.  This would be a non-hearsay purpose because she would not be introducing those documents to prove that the pay rates contained within them were the actual pay rates, but only to explain how she came to believe that systemic pay disparities existed.

If Carosella may introduce all 101 documents for their effect on her, she may also, in theory, introduce the spreadsheets as summaries of the pay rates she looked at and reacted to in those 101 documents.  Thus, the spreadsheets are conceivably admissible as Rule 1006 summary exhibits of the data to which she reacted.  However, such exhibits must actually meet the requirements of Rule 1006, including "mak[ing] the [underlying documents] available for examination or copying, or both, by other parties."

One World argues that Carosella has never identified and is unprepared to produce the employment records underlying the spreadsheets.  (ECF No. 108 at 5–6.)  One World commendably acknowledges that the employment records are in its control, not Carosella's, but nonetheless argues that it is still Carosella's burden to identify which of those employment records she drew upon.  (*Id.*)  Carosella, in response, says nothing about One World's control over the employment records and does not deny that she has not identified which employee records she drew upon.  Nor does she attempt to identify the records now.  Rather, she argues that the non-hearsay "effect on the listener" purpose is enough to establish the spreadsheets' admissibility.  (ECF No. 115 at 3.)

Carosella is incorrect.  Simply because she can establish a non-hearsay purpose for the spreadsheets does not eliminate their character as *summary* exhibits.  If she cannot produce or at least identify the underlying employee files, One World cannot

check her work and make sure that she was reacting to accurate information (as opposed to mistranscribed or fabricated information). Accordingly, the spreadsheets are inadmissible under Rule 1006, and One World's request is granted on this basis.

**B.    Item 2: Evidence of Other Discrimination**

Carosella intends to offer "evidence of purportedly discriminatory actions or remarks by [One World] in connection with other employees. This evidence will involve protected characteristics other than sex and employees other than [Carosella]." (ECF No. 108 at 6.) One World argues that this evidence is irrelevant, is improper propensity evidence, and is unduly prejudicial and likely to cause confusion. (*Id.*)

Carosella counters with Rule 404(b)(2), which states that character and propensity evidence may be used for a purpose other than proving character and propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Carosella argues that she will offer "evidence of previous harassment and discrimination . . . to show One World's motive to pay male employees more than female employees, One World's knowledge that it was violating the [Equal Pay Act] and Title VII, and One World's motive and intent to discriminate against Ms. Carosella." (ECF No. 115 at 3.)

It is not at all clear how harassment and discrimination demonstrate a *motive* to pay female employees less than male employees. Permitting harassment of female employees is arguably *consistent* with paying female employees less, but introducing the evidence for that purpose is precisely what Rule 404(b)(1) prohibits, namely, putting on evidence of prior acts to establish the person's "character in order to show that on a particular occasion the person acted in accordance with the character."

It is likewise unclear how prior acts of harassment show knowledge of Equal Pay

Act and Title VII violations. This argument is particularly difficult to understand in the Equal Pay Act context, where harassment has no necessary bearing. And even in the context of Title VII, the fact that employees engage in harassment does not demonstrate the employer's knowledge of that harassment.

As for motive and intent to discriminate against Carosella herself, the potential relevance of this evidence becomes clearer. However, it is not One World's *direct* knowledge of alleged discrimination that matters. It is, rather, Carosella's *report* of discrimination that establishes One World's potential motive and intent to retaliate. In addition, the parties' proposed stipulated jury instructions regarding retaliation acknowledge that Carosella must prove "she was acting under a reasonable, good faith belief that One World . . . has discriminated against females on the basis of sex." (ECF No. 120 at 6.) But given that Carosella has framed her claims entirely in terms of sex discrimination, evidence about other forms of discrimination is not admissible.

The foregoing sets certain bounds on what Carosella can introduce into evidence about alleged discriminatory acts against others. Evidence of alleged sex discrimination that she personally witnessed or that was reported to her, and evidence of why she concluded that reports of discrimination were true, may be introduced in support of the reasonable, good faith belief element. Evidence of how she described any incident of alleged sex discrimination to her superiors may be introduced as evidence of One World's motive to retaliate. Nonetheless, the Court will not admit evidence offered to prove that specific instances of sex discrimination actually happened (other than the alleged discrimination directly against Carosella that underlies her Title VII discrimination, as opposed to retaliation, claim). It is not the jury's task to decide

whether employees other than Carosella suffered sex discrimination, but only to decide whether Carosella reasonably believed that sex discrimination was occurring and whether she reported apparent sex discrimination (as opposed to some other form of discrimination) to One World. Nor may Carosella argue to the jury that this evidence suggests One World's liability under her direct claims of Equal Pay Act and Title VII discrimination, or One World's liability for punitive damages.

One World's request is therefore granted in part and denied in part to the foregoing extent.

**C.     Item 3: Duties and Compensation of Other Female Administrators**

Similar to the foregoing argument, One World contends that Carosella should not be permitted to put on evidence "regarding the job duties and compensation of other female employees who held supervisory or administrator-level jobs," as compared to similar male employees. (ECF No. 108 at 8–9.) One World claims that apparent pay disparities between other male and female employees as irrelevant to Carosella's Equal Pay Act claim, where she must prove that she, personally, was paid less than a male employee performing substantially equivalent work. (*Id.* at 9.)

Carosella responds that she discovered her own actionable pay discrepancy while reviewing the pay of employees in a different department, and preventing the jury from learning that fact will only cause delay and confusion. (ECF No. 115 at 4–5.) She further argues that this information is relevant to her retaliation claims because she reported what she learned to her superiors and allegedly suffered retaliation as a consequence. (*Id.* at 5.)

As before, how Carosella obtained her belief that sex-based pay discrepancies were occurring and what she reported to her superiors is relevant to her retaliation

claims. But the Court agrees with One World that this information is not relevant to the question of whether Carosella personally suffered an Equal Pay Act violation. To the extent Carosella offers evidence for the latter purpose, or argues to the jury that this evidence suggests One World's liability on her direct claim for pay discrimination, or for punitive damages, the Court will exclude it.

One World's request is therefore granted in part and denied in part to the foregoing extent.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Carosella's Motion *in Limine* on Various Issues (ECF No. 107) is GRANTED IN PART and DENIED IN PART as stated above; and

2. One World's Motion *in Limine* (ECF No. 108) is GRANTED IN PART and DENIED IN PART as stated above.

Dated this 24th day of September, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge